TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
LUCY E. BROWN (HI Bar #10946)
LESLIE M. HILL (DC Bar #476008)
DAVID D. MITCHELL (IL Bar #6302250)
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Tel:   (202) 598-1868 (Brown)
Fax:  (202) 514-8865
Email: lucy.e.brown@usdoj.gov
Email: leslie.hill@usdoj.gov
Email: david.mitchell@usdoj.gov

ELLIOT ENOKI (HI Bar #1528)
Executive Assistant U.S. Attorney
District of Hawaii
Attorney for the United States,
Acting under Authority Conferred by
28 U.S.C. § 515
DANA A. BARBATA (HI Bar #9112)
Assistant U.S. Attorney
PJKK Federal Bldg., Room 6-100
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: dana.barbata@usdoj.gov

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CIVIL NO. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DECLARATORY** |
| v. | |

DEPARTMENT OF HEALTH, STATE OF HAWAII; ELIZABETH A. CHAR, in her official capacity as Department of Health Director; MARIAN E. TSUJI, in her official capacity as Department of Health Deputy Director;

**AND INJUNCTIVE RELIEF**

Defendants,

and

SIERRA CLUB; BOARD OF WATER SUPPLY, CITY AND COUNTY OF HONOLULU,

Intervenor-Defendants.

## INTRODUCTION

1.      The United States Department of the Navy (the "Navy") files this Complaint pursuant to 28 U.S.C. §§ 2201–02 and Hawaii Revised Statutes ("HRS") §§ 91-14 and 342L-13 to protect its rights respecting an order issued by the Hawaii Department of Health, Docket No. 21-UST-EA-02, on January 3, 2022 (the "Final Order").  *See* Exhibit A.  The Final Order unlawfully imposes certain requirements on the Navy's management of the Red Hill Bulk Fuel Storage Facility ("Red Hill" or "Facility"), which stores fuel to support U.S. military forces throughout the Indo-Pacific Command area of responsibility.  The Navy hopes to resolve any differences with the State of Hawaii regarding the Final Order through negotiation, but files this suit out of an abundance of caution to satisfy the 30-day

statute of limitations that Hawaii law imposes on judicial review of such orders. *See* HRS § 91-14(b).

2.     Since 2015, the Navy has worked closely with the Hawaii Department of Health ("DOH"), the United States Environmental Protection Agency ("EPA"), and other partners as the Navy conducts environmental analyses and infrastructure improvements to minimize the threat of any fuel releases at Red Hill.  This work has been carried out in accordance with an administrative agreement between DOH, the Navy, EPA, and the Defense Logistics Agency.  The Navy has also endeavored to obtain all necessary authorizations from DOH for the operation of the underground storage tanks at Red Hill.

3.     On November 20, 2021, the Navy recovered approximately 14,000 gallons of a fuel-and-water mixture that had been released from a fire suppression drain line located about a quarter of a mile downhill of the fuel tanks at Red Hill. The Navy quickly initiated an investigation into the release.  Following reports of a chemical or petroleum odor in the water in the Navy's water distribution system, the Navy immediately began testing the water and, along with the United States Army and others, providing potable and bottled water to residents.  The Navy has also provided information and held town halls for the Joint Base Pearl Harbor-Hickam community and arranged for alternative housing, laundry service, and medical assistance.

4.      On November 28, 2021, the same day the Navy began receiving reports of a chemical or petroleum odor in drinking water, the Navy shut down the Red Hill Shaft, one of three wells the Navy used to service the Navy's water distribution system.  The Navy later verified that the Red Hill Shaft was contaminated by the November 20, 2021 release.  In coordination with DOH and EPA, the Navy is in the process of completely flushing and testing the system.

5.      On December 6, 2021, DOH issued an ex parte Emergency Order directing the Navy to suspend operations at Red Hill, to install a drinking water treatment system at Red Hill Shaft, and to take a variety of other actions, including the defueling of the underground storage tanks at Red Hill.  *See* Exhibit B.  On January 3, 2022, after an expedited hearing, DOH adopted the requirements of the Emergency Order in a Final Order.

6.      These Orders were premised on HRS § 342L-9, which authorizes emergency powers and procedures only when "an imminent peril to human health and safety or the environment is or will be caused by: (1) A release; (2) Any action taken in response to a release from an underground storage tank or tank system; or (3) The installation or operation of an underground storage tank or tank system . . . that requires immediate action[.]"  The Final Order adopted the reasoning of the administrative hearings officer that two such "imminent perils" required immediate

action: first, the November 20, 2021 release; and second, the very existence of Red Hill.

7.    The Navy recognizes that the November 2021 release and subsequent contamination of the Red Hill Shaft was an emergency and is committed to remediating the situation.  The Final Order, however, reaches beyond the November 2021 release and, in so doing, exceeds the emergency powers granted DOH under HRS § 342L-9.  Rather than direct action that may be necessary to remediate the November 2021 release, the Final Order goes further, effectively seeking to shut down the Red Hill facility itself.  HRS § 342L-9 was not written to address long-term issues, which are the subject of other Hawaii statutes.  And the swift and truncated nature of the hearing DOH provided for review of the Emergency Order was inadequate to evaluate the entire Red Hill facility.

8.    Whether the entire facility is built and operated in a manner that protects human health and the environment is the subject of ongoing permitting proceedings following DOH's proposal to issue a permit for the underground storage tanks in June 2021.  And the actions necessary to manage long-term risk for the entire facility are also the subject of the pre-existing administrative agreement.  Though the Navy shares DOH's commitment to improving Red Hill and securing the health and safety of Hawaiian citizens and the environment, the Final Order here was not a lawful means for achieving these ends.

5

9.     Accordingly, Plaintiff, United States of America, files this Complaint pursuant to 28 U.S.C. §§ 2201–02 and HRS §§ 91-14 and 342L-13 to protect its right to present these objections, and, if unable to resolve this matter through negotiation, requests the Court to reverse, modify, or remand the Final Order in the manner identified herein.

## PARTIES

10.     Plaintiff in this action is the United States of America.

11.     Defendants in this action are DOH, Elizabeth A. Char, in her official capacity as Director of DOH ("Director"), and Marian E. Tsuji, in her official capacity as Deputy Director of DOH ("Deputy Director Tsuji").

12.     Intervenor-Defendants in this action are Sierra Club and Board of Water Supply, City and County of Honolulu ("BWS").

13.     Sierra Club and BWS intervened in the administrative proceedings below and are joined as defendants pursuant to Federal Rule of Civil Procedure 19(a)(1).

## JURISDICTION & VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1345 (United States as plaintiff).

15.     Venue is proper in the District of Hawaii pursuant to 28 U.S.C. § 1391(b)(1)–(2) because DOH resides in this judicial district, a

substantial part of the events or omissions giving rise to the claims asserted herein

occurred in this judicial district, and the Facility is situated in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.    A hearing on the Emergency Order was required by law.

HRS § 342L-9(a).

17.    DOH appointed an administrative hearings officer to preside over a

virtual hearing on the Emergency Order.

18.    A hearing was held on December 20 and 21, 2021.

19.    The hearing determined applicable rights, duties, and privileges with

respect to the Navy's operation of the Facility.

20.    The Navy participated in the hearing.

21.    On December 27, 2021, the hearings officer issued *Proposed Findings

of Fact, Conclusions of Law, and Decision and Order* ("Proposed Order"),

adopting all five Directives of the Emergency Order.  *See* Exhibit C.

22.    Pursuant to Hawaii Administrative Rules ("HAR") § 11-1-42(b), the

Navy timely filed exceptions to the Proposed Order.

23.    On January 3, 2022, Deputy Director Tsuji issued the Final Order,

adopting the Proposed Order in all substantive respects.

24.    The United States has exhausted all administrative remedies.

25.     The United States files this action in federal district court because Congress established that "civil actions, suits or proceedings" can be brought in federal court when the United States acts as a plaintiff.  28 U.S.C. § 1345.

26.     Following the filing of this action, the United States will file a similar action in Hawaii state circuit environmental court in Honolulu County.  That suit will be filed only out of an abundance of caution in the event that, for any reason, this Court does not exercise jurisdiction over this action.

## LEGAL BACKGROUND

### I.      The Resource Conservation and Recovery Act

27.     The Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C.  §§ 6901–6992k, sets forth a comprehensive regulatory framework for the management of solid and hazardous wastes from generation to final disposal.

28.     RCRA Subchapter IX, 42 U.S.C. §§ 6991–6991m, governs the regulation of underground storage tanks ("USTs").

29.     Departments, agencies, and instrumentalities of the federal government must comply with state and local "requirements, both substantive and procedural . . . , respecting underground storage tanks in the same manner, and to the same extent, as any person is subject to such requirements[.]"  42 U.S.C. § 6991f(a).  "Requirements" include "all administrative orders and all civil and administrative penalties and fines, regardless of whether such penalties or fines are

punitive or coercive in nature or are imposed for isolated, intermittent, or continuing violations." *Id.*

## II.    Hawaii's UST Program

30.    Hawaii sought and obtained EPA's approval to regulate UST systems within Hawaii's jurisdiction.  Hawaii; Final Approval of State Underground Storage Tank Program, 67 Fed. Reg. 60,161, 60,161 (Sept. 25, 2002) (approving program under EPA's 1988 UST regulations).  On July 30, 2020, EPA proposed to approve Hawaii's program revision addressing the 2015 revisions to the federal UST regulations.  Hawaii: Proposed Authorization of Underground Storage Tank Program Revisions, 85 Fed. Reg. 49,611 (Aug. 14, 2020).

31.    DOH implements Hawaii's UST regulatory program as set forth in HRS division 1, title 19, chapter 342L and Hawaii Administrative Rules title 11, subtitle 1, chapter 280.1.

32.    HRS § 342L-9 governs DOH's emergency powers and procedures in the event "that an imminent peril to human health and safety or the environment is or will be caused by: (1) A release; (2) Any action taken in response to a release from an underground storage tank or tank system; or (3) The installation or operation of an underground storage tank or tank system . . . that requires immediate action[.]"

33.     In the event of such an "imminent peril . . . requir[ing] immediate action," section 342L-9(a) provides that the Governor of Hawaii or the Director of DOH "may order any person causing or contributing to the peril to immediately reduce or stop the release or activity, and may take any and all other actions as may be necessary."

34.     HRS § 342L-9(a) further provides that "[t]he order shall fix a place and time, not later than twenty-four hours thereafter, for a hearing to be held before the director."

35.     The term "any person" as used in section 342L-9 includes federal agencies.  *See* HRS § 342L-1.

36.     DOH requires a permit to operate UST systems and provides a permitting procedure to determine whether such operation is protective of human health and safety and the environment.  *See generally* HAR Chapter 11-280.1, Subchapter 12.

37.     Permit decisions are subject to a contested hearing at which a permittee is afforded the opportunity to present evidence and argument on whether the long-term operation of a UST system is protective of human health and safety and the environment.  *See* HRS § 91-9.

### III.   Hawaii Contested Case Hearings

38.     Under Hawaii state law, "[a] contested case hearing is one that is (1) required by law and (2) determines the rights, duties, and privileges of specific parties." *Matter of Haw. Elec. Light Co., Inc.*, 145 Haw. 1, 13, 445 P.3d 673, 685 (2019) (internal citation omitted); *see also* HAR § 11-1-3.

39.     DOH's contested case hearings are governed by the Hawaii Administrative Procedure Act, HRS division 1, title 8, chapter 91, and HAR chapter 1, subchapter 2, §§ 11-1-21 through 11-1-43.

40.     HRS § 91-9(a) and (b) require that an agency's notice for a contested case "shall include . . . the particular sections of the statutes and rules involved" and "[a]n explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof," as well as "an opportunity for hearing after reasonable notice."

41.     HRS § 91-9(d) further requires that "[o]pportunities shall be afforded all parties to present evidence and argument on all issues involved."

42.     HRS § 91-12 states that "[e]very decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law.  If any party to the proceeding has filed proposed findings of

fact, the agency shall incorporate in its decision a ruling upon each proposed finding so presented."

43.     Judicial review of emergency orders issued by DOH under HRS § 342L-9 is governed by HRS §§ 91-14 and 342L-13.

44.     A reviewing court may reverse or modify an administrative order if the "substantial rights" of the aggrieved party have been prejudiced by the order and it is "in violation of constitutional or statutory provisions," "in excess of the statutory authority or jurisdiction of the agency," "made upon unlawful procedure," "affected by other error of law," "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record," "arbitrary, or capricious, or characterized by abuse of discretion," or based on a "clearly unwarranted exercise of discretion."  HRS § 91-14(g).  A reviewing court may also remand the case to the agency with instructions for further proceedings without making such findings. *Id.*

## FACTUAL BACKGROUND

**I.     Red Hill Bulk Fuel Storage Facility**

45.     The Navy owns and operates the Red Hill Bulk Fuel Storage Facility on the Island of Oahu, Hawaii.

46.     The Facility stores jet propellant fuel, aviation turbine fuel, and marine diesel fuel in bulk underground storage tanks.

47.     The Facility was built by the United States during World War II and began operating in 1943.

48.     There are 20 bulk USTs at the Facility, 14 of which currently contain fuel.  Each tank is 100 feet in diameter, 238 to 250 feet in height, and can store up to 12.5 million gallons of fuel.

49.     Each UST has a double block and bleed valve for isolation (positive, verifiable shutoff) of the UST and its fuel from the rest of the Facility.

50.     Fuel is transferred in and out of the tanks via pipelines located in a concrete tunnel that runs between the tanks and Pearl Harbor.  The pipelines are visible within the tunnel for inspection.

51.     Fuel stored at the Facility constitutes strategic reserve available to support U.S. military forces throughout the Indo-Pacific Command area of responsibility.

## II.     2014 Release and Administrative Order on Consent

52.     In 2014, approximately 27,000 gallons of fuel leaked from a UST at Red Hill that had been incorrectly repaired by a contractor.

53.     In 2015, the Navy entered into an Administrative Order on Consent ("AOC") with DOH, EPA, and the Defense Logistics Agency ("DLA") to take steps to ensure that the groundwater resource in the vicinity of the Facility is protected and the Facility is operated and maintained in an environmentally

protective manner.  The AOC "provides for the performance by Navy and DLA of a release assessment, response(s) to release(s), and actions to minimize the threat of future releases in connection with the . . . Facility . . . and on any property that may be affected now or in the future by petroleum or other substances released from the Facility."

54.     The Statement of Work for the AOC contains comprehensive requirements that the Navy and DLA must fulfill to ensure that Red Hill is operated in an environmentally protective manner and that the groundwater resource in the vicinity of the Facility is protected.  The AOC and Statement of Work require the Navy and DLA to submit deliverables to EPA and DOH for approval or modification.

55.     The AOC provides that, "unless required on an emergency basis, no [HRS § 342L-9 enforcement] shall be taken in relation to any activity within the scope of this AOC unless a Party has first made good faith efforts to address the issue through a modification to this AOC and, if necessary, through the Dispute Resolution process set forth" in the AOC.

## III.   Red Hill UST Permit Proceeding

56.     DOH is the regulatory agency authorized to issue permits for the operation of USTs in the State of Hawaii.  The DOH Director may issue such

14

permits for up to five years if the Director determines that doing so would "be protective of human health and the environment[.]"  HRS § 342L-4(c).

57.   DOH's UST regulations required the Navy to apply for a permit to operate the USTs at Red Hill by July 15, 2019.  *See* HAR §§ 11-1-280.1-10(a)(1)(A), 11-280.1-323.

58.   The Navy timely submitted a permit application to DOH.

59.   In a letter dated July 16, 2019, DOH confirmed the Navy's application to be timely.  DOH further stated that it intended to allow the Navy to continue to operate the Red Hill UST system until a decision on the permit application was rendered.

60.   When DOH issued the draft permit for public notice and comment, Sierra Club and BWS requested a contested case hearing.  DOH Environmental Health Administration ("EHA") also joined as a party to the contested case hearing.

61.   A contested case hearing was held before a DOH hearings officer from February 1–8, 2021 and was reopened on July 7, 2021 to receive additional evidence and testimony.

62.   The hearings officer took evidence and testimony on geology and subsurface characteristics at Red Hill; groundwater at and near Red Hill; past releases of fuel; soil vapor and groundwater monitoring; tank construction and

compliance with the Hawaii Administrative Rules; tank inspection, repair, and maintenance; leak detection methods and requirements; corrosion extent, detection, and repair; extent of the monitoring well network; seismicity; and a release that occurred on May 6, 2021.

63.    On September 20, 2021, the hearings officer issued a Proposed Decision and Order, Findings of Fact, and Conclusions of Law ("Permit Proposed Order") recommending that DOH issue a permit authorizing the Navy to operate and maintain Red Hill for a period of five years subject to certain conditions.

64.    In November 2021, EHA, Sierra Club, and BWS moved to reopen the hearing, which the Navy opposed.

65.    The hearings officer has withdrawn the Permit Proposed Order "for possible revision following the receipt of further evidence and information" in the Permit Proceeding.  That proceeding is ongoing.

**IV.    May 6, 2021 Release**

66.    On or about May 6, 2021, operator error during a fuel transfer caused a transient pressure surge in a pipe near some of the Red Hill USTs.

67.    The pressure surge caused a rupture in the pipe, from which fuel was released into the lower access tunnel area beneath the USTs.

68.     The Navy promptly notified DOH about the spill.  The Navy estimated that approximately 1,600 gallons of fuel had been released, but believed that most had been recovered.

69.     The May 6, 2021 release was from a ruptured pipe, and not from the USTs.

## V.     November 20, 2021 Release

70.     On or about November 20, 2021, a drain line for the fire suppression system at Red Hill was damaged at a point in the concrete tunnel approximately a quarter-mile downslope from the Red Hill USTs, releasing a fuel-water mixture into the tunnel between the tanks and Pearl Harbor.

71.     Approximately 14,000 gallons were contained and recovered.

72.     The fire suppression system is designed to collect dispersed agent and other liquids from firefighting incidents in retention sumps.  The contents are then transferred via sump pump to a fire suppression system retention tank.  The collection lines are ordinarily empty and are not connected to the fuel pipelines or USTs.

73.     There is no evidence that the November 20, 2021 release was due to a flaw, hole, or other problem in a UST.

74.     The Navy believes the May 6 and November 20, 2021 releases are likely related, but its investigation is not yet final.

17

## VI.    The Navy's Response to the November 20, 2021 Release

75.    On November 23, 2021, the Commander, U.S. Pacific Fleet, convened an investigation into the May 6 and November 20, 2021 incidents.

76.    The Navy owns and operates a water system that pumps water from underground aquifers to provide drinking water to the military community and facilities associated with Joint Base Pearl Harbor-Hickam ("JBPHH"), including Public-Private Venture Housing ("PPV").

77.    Three wells supply the Navy's drinking water system:  the Red Hill Shaft, Navy Aiea-Halawa Shaft, and Waiawa Shaft.  The November 20, 2021 release migrated to the Red Hill Shaft and contaminated the Red Hill Shaft.

78.    The Navy shut down Red Hill Shaft on November 28, 2021, after receiving complaints from residents of PPV Housing and JBPHH about the odor of the drinking water supplied by the Navy's drinking water system.

79.    The Navy immediately began sampling water within its water distribution system, and has continued to do so.  The Navy promptly conveys sampling results to DOH as they are received.

80.    Red Hill Shaft remains shut down.

81.    By November 30, 2021, the Navy had begun providing bottled and bulk replacement water supplies to all affected residents and users served by its water system, and alternative facilities for bathing and laundry.

18

82.     On December 3, 2021, the Commander, U.S. Pacific Fleet, amended the command investigation convened on November 23, 2021, directing that the investigating officer investigate whether the events of May 6 and November 20, 2021 contributed to or caused the contamination of the Red Hill Shaft.

83.     Out of an abundance of caution, the Navy shut down Aiea-Halawa Shaft on December 3, 2021.

84.     On December 7, 2021, the Secretary of the Navy directed the Chief of Naval Operations to continue isolating the Red Hill and Aiea-Halawa Shafts until the water distribution main and all affected homes and buildings have been flushed and can be supplied with potable water that meets EPA drinking water standards.

85.     To treat the water at Red Hill Shaft, the Navy purchased two Granular Activated Carbon water filtration units ("GACs") capable of filtering up to 10 million gallons per day, a system that can be replaced by a permanent water treatment system in the future.

86.     The Navy is supplying water from the unaffected Waiawa Shaft to affected housing.

87.     The Navy utilized 25 smaller GACs to flush and treat the water distribution system.  Initial flushing of all distribution lines has been completed. Testing of the distribution lines is ongoing.

88.    The Navy is also flushing and testing all affected homes and buildings.

89.    The Navy voluntarily suspended operations at the Red Hill USTs until the investigation into the cause of the contamination is complete.

## VII.   The Emergency Order

90.    On December 6, 2021, DOH issued an Emergency Order pursuant to HRS § 342L-9.

91.    The Emergency Order states that it is "based upon recent impacts on the [Navy's] drinking water system incident to the operation of the Red Hill Bulk Fuel Storage Facility."

92.    The Emergency Order describes the "Situation" presented as: the complaints from water users of a gas or fuel odor from their drinking water, the Navy's acknowledgment that Red Hill Shaft is the source of the fuel contamination, and the absence of on-site remedies available to treat the water prior to distribution.

93.    As "additional justifications," the Emergency Order cites purported failures on the part of the Navy to submit deliverables under the AOC that satisfy DOH, uncertainty as to the amount of fuel released in the May 6, 2021 incident, the possibility that the November 20, 2021 incident released fuel into the

environment, and a lack of infrastructure and procedures to rapidly identify and contain subterranean fuel spills.

94.     The Emergency Order does not state that the Red Hill Facility itself is an imminent peril requiring immediate action.  Nor does the Emergency Order state that the "configuration and operation of the Facility" is the basis for the order. The Emergency Order does not specify that "the configuration and operation of the Facility" itself authorizes action under HRS § 342L-9.  However, DOH's later order repeatedly refers to the configuration and operation of the Facility as an imminent peril requiring immediate action.

95.     The Emergency Order has five Directives.

96.     Directive One requires the Navy to "[i]mmediately suspend operations including, but not limited to, fuel transfers at the Bulk Fuel Storage Tanks at the Facility.  [The Navy] shall, however, maintain environmental controls, release detection and release response protocols, and compliance with applicable regulations."

97.     Directive Two requires the Navy to "[t]ake immediate steps to install a drinking water treatment system or systems at Red Hill Shaft to ensure distribution of drinking water conforms to the standards prescribed by the Safe Drinking Water Act and applicable regulations and minimize movement of the contaminant plume(s).  The treatment system(s) shall be reviewed and approved by

the Department prior to installation and shall be installed as expeditiously as practicable."

98.    Directive Three directs the Navy to, "[w]ithin 30 days of receipt of this [Emergency Order], submit a workplan and implementation schedule, prepared by a qualified independent third party approved by the Department, to assess the Facility operations and system integrity to safely defuel the Bulk Fuel Storage Tanks.  Upon the Department's approval of the assessment, workplan and implementation schedule, conduct necessary repairs and make necessary changes in operations to address any deficiencies identified in the assessment and workplan.  Corrective actions shall be performed as expeditiously as possible."

99.    Directive Four requires the Navy to, "[w]ithin 30 days of completion of required corrective actions under Item 3, defuel the Bulk Fuel Storage Tanks at the Facility.  Any refueling shall be subject to a determination by the Department that it is protective of human health and the environment."

100.   Directive Five directs the Navy to perform an overall long-term risk assessment and implementation of conditions to mitigate long-term risk, specifically, "[w]ithin 30 days of receipt of this [Emergency Order] submit a workplan and implementation schedule, prepared by a qualified independent third party approved by the Department, to assess operations and system integrity of the Facility to determine design and operational deficiencies that may impact the

environment and develop recommendations for corrective action.  Submit the

assessment, proposed work and recommendations for corrective action to the

Department with an implementation schedule.  Upon the Department's approval,

perform work and implement corrective actions.  Corrective actions shall be

performed as expeditiously as possible."

101.   The Emergency Order does not state how the Directives relate to, and

may be necessary with respect to, any findings made by DOH.

102.   Emergency Order Directive 1 does not provide how or when it will

terminate.

103.   Emergency Order Directive 4 states that "[a]ny refueling shall be

subject to a determination by [DOH] that it is protective of human health and the

environment."  Directive 4 does not state how or when such a determination would

be made.

104.   DOH has not utilized the dispute resolution requirements of the AOC

to address any alleged long-term risk associated with the configuration and overall

operation of the Facility.

## VIII.  Contested Case Hearing on the Emergency Order and Final Order

105.   Pursuant to HRS § 26-38, DOH Director Char delegated to Deputy

Director Tsuji "all powers, rights, and duties necessary to make a final

determination in this matter, in accordance with section 11-1-42(c), HAR."

106.   A hearings officer presided over a virtual hearing on December 20 and 21, 2021.

107.   Sierra Club and BWS intervened in the hearing.

108.   The hearings officer scheduled one day for hearing testimony; Navy and DOH were each allowed three hours to conduct direct and cross-examination of witnesses.  Sierra Club and BWS were each allowed two hours for the same.

109.   At the hearing, the Navy introduced four witnesses and 65 exhibits, DOH introduced four witnesses and 51 exhibits, BWS introduced two witnesses and 342 exhibits (amounting to over 42,000 pages), and Sierra Club introduced six witnesses and 40 exhibits (amounting to over 4,000 pages).

110.   The Navy filed 223 proposed findings of fact ("FOFs") and 22 proposed conclusions of law ("COLs").  DOH, Sierra Club, and BWS jointly filed 97 proposed FOFs and 46 proposed COLs.

111.   The hearings officer issued a Proposed Order on December 27, 2021.  Although the Emergency Order states that it is based on "recent impacts to the [Navy's] drinking water system," the Proposed Order concludes that the Emergency Order "alleges two separate, but related 'perils.'"  The Proposed Order states that the "first alleged 'peril' concerns the November 2021 Release, the contamination of the Red Hill Shaft, the harm caused to Hawaii residents, and the response thereto."  The Proposed Order states that the "second alleged 'peril' is the

Red Hill Facility itself, based upon the history of releases, the lack of 'necessary environmental protection to rapidly identify and remediate fuel leaks,' and the assertion that the Navy 'has not demonstrated that immediate and appropriate response actions are available, and therefore cannot ensure that immediate and appropriate response actions will be available should another release occur[] in the future.'" The Proposed Order adopts all five Directives of the Emergency Order but does not explain how or why each Directive may be necessary based on the November 2021 release or based on the Red Hill Facility as currently configured and operated.

112. The Proposed Order contains 106 FOFs and 38 COLs.

113. FOFs 33, 42, 60, and 61 of the Proposed Order are the only findings that include citations to the record.

114. The Final Order did not rule on any of the FOFs proposed by any party.

115. The Final Order adopted the Proposed Order in all respects except for a typographical error in FOF 101.

116. The Final Order does not take into account efforts the Navy has taken or will take in response to the November 2021 release pursuant to orders from the Secretary of the Navy. With respect to future actions of the Navy, the Final Order states that the commitments of the Secretary of the Navy "can be rescinded, in

whole or in part . . . at any time."  The Final Order does not appear to take into account any changed conditions.

## FIRST CLAIM FOR RELIEF

### The Evidence Presented Does Not Support a Finding that the Configuration and Operation of the Red Hill Facility Itself Poses an Imminent Peril Requiring Immediate Action Under HRS § 342L-9

117.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 116 of this Complaint.

118.   The Final Order is based on a finding that there are two alleged imminent perils requiring immediate action, the first being the November 2021 release and the second being the configuration and operation of Red Hill itself.

119.   Contrary to the second finding, the configuration and operation of the Red Hill Facility itself is not an imminent peril that requires immediate action under HRS § 342L-9.

120.   The Final Order Directives, insofar as they are based on an imminent peril requiring immediate action that is caused by or that will be caused by the configuration and operation of the Red Hill Facility itself, are in excess of DOH's statutory authority under HRS § 342L-9; clearly erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or otherwise not in accordance with the law.

## SECOND CLAIM FOR RELIEF

**DOH Has Not Shown That the Final Order Directives Are Necessary to Address the Configuration and Operation of the Red Hill Facility Itself, And Hence Could Be Authorized Under HRS § 342L-9**

121.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 120 of this Complaint.

122.   DOH has not shown that the Final Order Directives may be necessary to address the second alleged imminent peril requiring immediate action, i.e., the configuration and operation of the Red Hill Facility itself.

123.   The Final Order Directives, to the extent they are based on the configuration and operation of Red Hill itself are thus in excess of DOH's statutory authority under HRS § 342L-9; clearly erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or otherwise not in accordance with the law.

## THIRD CLAIM FOR RELIEF

**DOH Has Not Shown that Final Order Directives 3, 4, and 5 Are Authorized Under HRS § 342L-9 to Address the November 2021 Release**

124.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 123 of this Complaint.

125.   DOH has not shown that Final Order Directives 3, 4, and 5 may be necessary under HRS § 342L-9 to address an imminent peril requiring immediate action that was caused by or will be caused by the November 2021 release.

126.   Final Order Directives 3, 4, and 5 are in excess of DOH's statutory authority under HRS § 342L-9; clearly erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or otherwise not in accordance with the law.

## FOURTH CLAIM FOR RELIEF

**Directives 1 and 4 Are Not Authorized Under HRS § 342L-9 Because They Do Not Provide Sufficient Standards for Their Termination**

127.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 126 of this Complaint.

128.   Final Order Directive 1, requiring the suspension of operations, does not provide sufficient standards for its termination under HRS § 342L-9.

129.   Final Order Directive 4, requiring the defueling of the USTs, does not provide sufficient standards for its termination under HRS § 342L-9.

130.   Final Order Directives 1 and 4 do not consider actions that the Navy has taken and will take to address the perils alleged to require immediate action in the Final Order.  Final Order Directives 1 and 4 do not provide for relief from or termination of the Directives based on any changed conditions or based on the Navy's completion of the corrective actions alone.  Final Order Directives 1 and 4 are thus not sufficiently-tailored actions under HRS § 342L-9.

131.   DOH's failure to provide sufficient standards for the termination of Directives 1 and 4 is in excess of DOH's statutory authority under HRS § 342L-9

and, on the record presented in the contested case hearing, is clearly erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or otherwise not in accordance with HRS § 342L-9.

## FIFTH CLAIM FOR RELIEF
### DOH Violated HRS § 91-9

132.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 131 of this Complaint.

133.   DOH did not provide adequate notice under HRS § 91-9(b) that the Directives in the Emergency Order were authorized based on an imminent peril requiring immediate action that was caused by or that will be caused by the current configuration and operation of the Red Hill Facility itself.

134.   DOH did not provide adequate notice under HRS § 91-9(a) and (b) that any contested hearing would consider whether an imminent peril requiring immediate action exists or will be caused by the current configuration and operation of the Red Hill Facility itself.

135.   The contested hearing did not afford the Navy sufficient opportunity to present evidence and argument under HRS § 91-9(d) on whether an imminent peril requiring immediate action exists or will be caused by the current configuration and operation of the Red Hill Facility itself.

136.   DOH's failure to provide adequate notice and sufficient opportunity to present evidence and argument on whether an imminent peril requiring immediate action exists or will be caused by the current configuration and operation of the Red Hill Facility itself was in violation of HRS § 91-9; in excess of DOH's statutory authority; an unlawful procedure; clearly erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or otherwise not in accordance with the law.

## SIXTH CLAIM FOR RELIEF
## DOH Violated HRS § 91-12

137.   The United States realleges and incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 136 of this Complaint.

138.   The Final Order failed to provide citation to any evidence from the contested hearing record for all FOFs other than the FOFs in paragraphs 33, 42, 60, and 61.

139.   The Final Order failed to rule on any of the proposed FOFs submitted in the contested hearing by any of the parties to the hearing.

140.   DOH's failure to provide citations to evidence from the contested hearing record for its FOFs and failure to rule on any of the proposed FOFs was in violation of HRS § 91-12; in excess of DOH's statutory authority; an unlawful

procedure; clearly erroneous; arbitrary, capricious, and an abuse of discretion;

clearly unwarranted; or otherwise not in accordance with the law.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court grant

the following relief:

(1)     Declare that DOH exceeded its authority under HRS § 342L-9;

(2)     Declare that the Final Order Directives are not authorized under

HRS § 342L-9 to the extent they are founded on a finding that the configuration

and operation of the Red Hill Facility itself constitutes an imminent peril requiring

immediate action; and, with respect to said peril, that the Directives are clearly

erroneous; arbitrary, capricious, and an abuse of discretion; clearly unwarranted; or

otherwise not in accordance with the law;

(3)     Declare that Final Order Directives 3, 4, and 5 are not authorized

under HRS § 342L-9 to the extent they are founded on a finding of imminent peril

requiring action resulting from the November 2021 Release; and, with respect to

said peril, that Directives 3, 4, and 5 are clearly erroneous; arbitrary, capricious,

and an abuse of discretion; clearly unwarranted; or otherwise not in accordance

with the law;

(4)     Declare that Final Order Directives 1 and 4 are not authorized under

HRS § 342L-9 because they lack sufficient standards for their termination;

31

(5)   Declare that DOH violated HRS §§ 91-9 and 91-12;

(6)   Enter preliminary injunctive relief, as may be sought by the United States, including staying part or all of the Final Order;

(7)   Vacate those portions of the Final Order that are based on a finding that the configuration and operation of the Red Hill Facility itself is an imminent peril requiring immediate action under HRS § 342L-9;

(8)   Remand the Final Order to DOH for actions consistent with the Court's order; and

(9)   Grant such other relief as may be just and proper.

//

//

//

//

//

//

//

//

//

//

//

Dated: February 2, 2022          Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/* Lucy E. Brown
LUCY E. BROWN (HI Bar #10946)
LESLIE M. HILL (DC Bar #476008)
DAVID D. MITCHELL (IL Bar #6302250)
Environmental Defense Section

ELLIOT ENOKI (HI Bar #1528)
Executive Assistant U.S. Attorney
District of Hawaii
Attorney for the United States,
Acting under Authority Conferred by
28 U.S.C. § 515
DANA A. BARBATA (HI Bar #9112)
Assistant U.S. Attorney

Attorneys for Plaintiff